DECISION
The defendant, Dennis Evans, was charged in this information with multiple counts including possession of a controlled substance with the intent to deliver. At the time of his arrest, seven thousand one hundred ($7,100) dollars in cash was seized from the defendant. Although the case against the defendant was eventually dismissed by the Attorney General's Office, the Warren Police Department refused to return the seized money without an appropriate order from the Superior Court.
As a result of this refusal, defendant filed a motion to return the seized property. On the date that the motion was to be heard, Fleet Bank made an oral claim for the seized funds and the case was referred here for evidentiary hearing on the motion to return the seized property.
On August 16, 1991, defendant was arrested by Warren Police. At the time of the arrest, he was on escape status from the Adult Correctional Institution since May of 1991. Police confiscated from the defendant a gun, narcotics, and the money that is the subject of this hearing.
One week prior to this arrest, on August 9, Fleet Bank in the City of Warwick was robbed of approximately twenty thousand ($20,000) dollars. Evans was indicted on the charge of robbery and conspiracy to rob along with Darrell Kroll and Dean Wilkinson. Wilkinson entered a plea of guilty to the robbery. At the trial, Kroll plead guilty to robbery and testified against Evans naming him as the robber. However, the jury returned a verdict of not guilty against Evans as to the robbery but did convict him on the conspiracy charge.
As a result of this conviction, Fleet Bank now claims that the money must have come into Evans' possession as a result of the robbery. Evans on the other hand points out that the money in question was not entered as an exhibit during the robbery trial and cannot be traced to Fleet.
At the hearing, Detective Christopher Decomitis of the Warren Police Department testified that the money was seized from Evans on August 16, 1991 and has remained in the custody of the Department since that date. Furthermore, he acknowledged that the money had never been sought by the Attorney General's Office for any other matter. It should be noted that Detective Decomitis' testimony is noteworthy in this case if for no other reason than that it was believable which places it in stark contrast to what would follow.
Darrell Kroll testified that he entered a plea in the robbery case as part of and agreement with the Attorney General's Office. He pointed to Evans as the person who committed the Fleet robbery on August 9, 1991. Also, Kroll, who was with Evans at the time of the August 16, 1991 arrest, claimed to have been with Evans constantly between the robbery and arrest. It was Kroll's claim that the seized property was the remaining proceeds from the robbery.
Kroll's testimony was contradicted by Dean Wilkinson who named Kroll rather than Evans as the perpetrator of the crime. Wilkinson's testimony was long, contradictory and mostly unconvincing.
Dennis Evans testified at the hearing. He admitted to a long criminal record but denied taking part in the robbery at Fleet. Evans claims that the source of the contested funds was a combination of loans from nameless friends, the proceeds from the sale of vehicles, and gambling winnings. Evans was questioned as to his spending habits between his May escape and August arrest. Fleet maintains that from this testimony the only possible source of the seized money was the Fleet robbery.
R.I.G.L. § 12-5-7 which deals with the question of seized property provides in pertinent part:
 "Disposition of Seized Property.
 (a) The property seized shall be safely kept by the officer seizing it, under the direction of the court, so long as may be necessary for the purpose of being used as evidence.
 (b) As soon as may be thereafter, it the property be subject to forfeiture, such further proceedings shall be had on the property for forfeiture as is prescribed by law in Chapter 21 of Title 12.
 (c) If the property seized was stolen or otherwise unlawfully taken from the owner, or is not found to have been lawfully used or intended for unlawful use, or is found to have been unlawfully used without the knowledge of the owner, it shall be returned to the person legally entitled to its possession."
In the instant case, the Attorney General's Office never moved to forfeit the money, because it could not be determined to be the proceeds of narcotics' dealing. Therefore, Evans relies on the above-cited statute and claims to be the person legally entitled to the money.
However, fleet Bank claims that the Rhode Island Supreme Court has held that a defendant is only entitled to such funds if the money is neither contraband nor unlawfully taken from its original owner. State v. DeMasi, 47 A.2d 1139 (R.I. 1982). In support of this position, Fleet points to Evans' testimony that the funds were, at least in part, from illegal gambling operations and furthermore, that the funds were to be used for illegal gambling and drug activities. Therefore, Fleet maintains that Evans, in his testimony at the hearing, admitted to both an illegal source as well as an intended illegal use of the funds and is therefore barred from the return of the money pursuant to R.I.G.L. § 12-5-7 above.
Next, Fleet claims that they have met the burden of proof that the funds were taken in the robbery of August 9, 1991. They point to the fact that Evans was convicted of planning the robbery and was unable to name any living person as an alternate source of the funds. Also, they point to State v. Gottschalk,373 A.2d 182 (R.I. 1977), in which defendant sought the return of certain items that could be used as burglary tools. In that case, the court refused to return the items concluding that the defendant intended to put the items to an unlawful use.
After a careful consideration of the testimony at the hearing and a review of arguments of counsel representing all the parties in this matter, this Court is not convinced that the seized funds are in fact the property of Fleet Bank. Without question Fleet has shown that Evans is a thief. In fact, Evans himself, freely admitted as much in his testimony. However, no direct link has been established between Fleet and the funds in question.
Neither of the cases cited by Fleet support the proposition that Evans should be denied the funds. In State v. DeMasi, the court held that the state must prove that the seized property was either stolen or contraband subject to forfeiture and minus such a showing it must be returned. As stated above, this Court is not convinced that the money can be linked to Fleet.
Likewise, in State v. Gottschalk, the property in question could clearly be considered burglary tools. In the case at bar, the property sought is in and of itself not illegal but rather is money, a type of item that even convicted felons such as Evans are allowed to possess.
This Court is not unmindful of the criminal record of Evans. In fact, it would have been helpful if Fleet had sought restitution from the defendant at the robbery trial. However, this was not done and this Court is unable to correct this oversight in the instant case. However, Evans does, as a result of his criminal record, owe $2,021.45 in court costs to the Superior Court. Therefore, that amount will be retained by the Central Registry of the Superior Court before returning the balance to Evans.
Therefore, in accordance with this decision, the Warren Police Department is hereby ordered to turn over the seized funds to the Central Registry of the Superior Court, said Registry is to deduct the amount owed by defendant, and the balance is hereby ordered to be returned to defendant Dennis Evans.
Counsel for Evans will prepare an order in accordance with this decision.